# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF MINNESOTA, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEW YORK, AND COMMONWEALTH OF VIRGINIA, | Court File No. |
| | **FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR A JURY TRIAL** |
| ex rel. | |
| | **FILED UNDER SEAL AND *IN CAMERA* PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| Ryan Mesaros (Relator), | |
| Plaintiffs, | |
| | **DO NOT PLACE IN PRESS BOX DO NOT ENTER ON PACER OR CM/ECF** |
| v. | |
| Target Corporation, a Minnesota corporation, | |
| Defendant. | |

Plaintiff and Relator Ryan Mesaros, through his attorneys, JOHN A. KLASSEN, P.A., 310 Fourth Avenue South, Suite 5010, Minneapolis, Minnesota 55415, and MULLER & MULLER, P.L.L.C., 3109 West 50th Street, Suite 362, Minneapolis, Minnesota 55410, states and alleges as follows:

## NATURE OF CLAIM

1.      Ryan Mesaros, Pharm.D. ("Relator") brings this action on behalf of the United States of America and the State of Minnesota, the Commonwealth of Massachusetts, the State of New York, and the Commonwealth of Virginia (hereinafter "the Plaintiff States"), against Defendant, Target Corporation ("Defendant") for damages and civil penalties arising from Defendant's violations of the United States False Claims Act, 31 U.S.C. §§ 3729 to 3733, the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq., the Massachusetts False Claims Act, Mass. Gen. Laws Ch. 12 §§ 5A et seq., the


SCANNED
JUN 0 9 2015

New York False Claims Act, State Finance Law, Art. XIII (2013) § 187 et seq., and the Virginia Fraud Against Taxpayers Act, § 8.01-216.1 et seq. (hereinafter referred to jointly as the "False Claims Acts").

2.     While transacting business in Minnesota, Massachusetts, New York and Virginia, Defendant has (as described in further detail below) engaged, and continued to engage, in the following unlawful conduct in violation of the False Claims Acts:

a.     Defendant has submitted or caused to be submitted claims to Medicaid for "non-covered" pharmaceutical goods and services for which they are expressly prohibited from seeking reimbursement under the Plaintiff States' laws, rules and regulations governing Medicaid and Medical Assistance;

b.     Defendant continues to submit or cause to be submitted claims to Medicaid for "non-covered" pharmaceutical goods and services for which it is expressly prohibited from seeking reimbursement under the Plaintiff States' laws, rules and regulations governing Medicaid and Medical Assistance;

c.     Defendant has submitted or caused to be submitted claims to Medicaid for "non-covered" services, involving dispensing of pharmaceuticals to patients that resulted in the provision of excessive prescriptions and waste of government monies and resources, and for which they were expressly prohibited from seeking reimbursement under the Plaintiff States' laws, rules and regulations governing Medicaid and Medical Assistance; and

d.     Defendant continues to submit or cause to be submitted claims to Medicaid for "non-covered" services, involving dispensing of pharmaceuticals to patients that result in the provision of excessive prescriptions and waste of government monies

and resources, and for which they are expressly prohibited from seeking reimbursement under the Plaintiff States' laws, rules and regulations governing Medicaid and Medical Assistance.

3.      Defendant has knowingly, or with deliberate ignorance and reckless disregard of the truth or falsity of information, undertaken actions to implement, condone, and continue the submission of these false claims to the United States Government and the governments of the Plaintiff States. As required by the United States False Claims Act and the Minnesota False Claims Act, Relator has provided to the Attorney General of the United States, the United States Attorney for the District of Minnesota ("AUSA-MN"), the OIG HHS, and the State of Minnesota Attorney General statements of all material evidence and information related to this Complaint. These disclosure statements were supported by material evidence known to Relator at the time. Because these statements included attorney-client communications and work product of Relator's attorneys, and were submitted to the United States Attorney General, the AUSA-MN, the OIG HHS, and the State of Minnesota Attorney General in their capacities as potential co-counsel in this litigation, Relator understood and intended these disclosures to be confidential.   These disclosures shall be served on the Attorneys General of the other Plaintiff States with the Complaint, pursuant to each state's False Claims Act.

4.      Prior to filing this Complaint, on or about May 12, 2015, pursuant to the False Claims Acts, Relator voluntarily provided the AUSA-MN, the OIG HHS and the State of Minnesota Attorney General with documentary and testimonial evidence supporting the claims asserted herein against Defendant. This evidence included work

product of Relator's attorneys, and it was submitted to the United States Attorney General, the AUSA-MN, the OIG HHS and the State of Minnesota Attorney General in their capacities as potential co-counsel in this litigation. The Relator understood and intended these disclosures of evidence to be confidential.

## JURISDICTION AND VENUE

5.     This action arises under the United States False Claims Act, the Minnesota False Claims Act, the Massachusetts False Claims Act, the New York False Claims Act, and the Virginia Fraud Against Taxpayers Act. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b), and because Defendant resides, owns property, employs individuals, and transacts business in this District. This Court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.  The Court has pendant jurisdiction over the state law claims.

6.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a); many of the unlawful acts complained of herein took place in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, Defendant resided, owned property, employed individuals, and transacted business in this District.

## PARTIES

7.     Relator is an adult male who at all times relevant was a resident of Minnesota and a citizen of the United States and of the State of Minnesota.  At all times material, Relator was a licensed pharmacist and an "employee" of Defendant.  Relator brings this action based on direct, independent, and personal knowledge, except where alleged upon information and belief. Relator is an original source of this information to

the United States and the Plaintiff States' Governments. He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided this information to the United States Attorney's Office, the OIG HHS and the State of Minnesota Attorney General before filing this action under the False Claims Acts.

8.      Defendant is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota, was at all times material Relator's employer. Defendant employed him at its retail stores throughout Minnesota, where it provides retail pharmacy services to Medicaid patients and beneficiaries. Medicaid is a public assistance program providing for payment of medical expenses for low-income patients, including payment in whole or in part for pharmaceutical goods and services.  Funding for Medicaid is jointly shared by the state and federal governments, including the Plaintiff States.

## THE FALSE CLAIMS ACTS

9.      The United States False Claims Act provides, in pertinent part that:

(a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; ... or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

***

is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....

For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729.

10. Similarly, the Minnesota False Claims Act, provides, in pertinent part that:

(a) A person who commits any act described in clauses (1) to (7) is liable to the state or the political subdivision for a civil penalty of not less than $5,500 and not more than $11,000 per false or fraudulent claim, plus three times the amount of damages that the state or the political subdivision sustains because of the act of that person, except as otherwise provided in paragraph (b): (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (2) knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (3) knowingly conspires to commit a violation of clause (1), (2), (4), (5), (6), or (7); (7) knowingly makes or uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a political subdivision, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state or a political subdivision.

For purposes of this section of the Minnesota False Claims Act, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. No proof of specific intent to defraud is required, but in no case is a person who acts merely negligently, inadvertently, or mistakenly with respect to information deemed to have acted knowingly. Minn. Stat. §§ 15C.01 et seq.

11. The Massachusetts False Claims Act, provides, in pertinent part that:

(a) Any person who: (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (2) knowingly makes,

uses or causes to be made or used a false record or statement material to a false or fraudulent claim; (3) conspires to commit a violation of this subsection; (9) knowingly makes, uses or causes to be made or used a false record or statement material to an obligation to pay or to transmit money or property to the commonwealth or a political subdivision thereof, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the commonwealth or a political subdivision.....shall be liable to the commonwealth or political subdivision for a civil penalty of not less than $5,500 and not more than $11,000 per violation...plus three times the amount of damages, including consequential damages, that the commonwealth or a political subdivision thereof sustains because of such violation. Mass. Gen. Laws Ch. 12 §§ 5B(a).

For purposes of this section of the Massachusetts False Claims Act, the terms "knowing" or "knowingly" mean possession of actual knowledge of relevant information, acting with deliberate ignorance of the truth or falsity of the information, or acting in reckless disregard of the truth or falsity of the information; provided, however, that no proof of specific intent to defraud shall be required. Mass. Gen. Laws Ch. 12 §§ 5A.

12.     The New York False Claims Act, provides, in pertinent part that:

(1) Any person who: (a) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (b) knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim; (c) conspires to commit a violation of paragraph (a), (b), (d), (e), (f) or (g) of this subdivision; (g) knowingly makes, uses or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government; or (h) knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state or local government, or conspires to do the same; shall be liable to the state or a local government, as applicable, for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of all damages, including consequential damages, which the state or local government sustains because of the act of that person. N.Y. State Finance Law, Art. XIII (2013), §189 et seq.

For purposes of this section of the New York False Claims Act, the terms "knowing" or "knowingly" mean possession of actual knowledge of relevant information, acting with

deliberate ignorance of the truth or falsity of the information, or acting in reckless disregard of the truth or falsity of the information; provided, however, that no proof of specific intent to defraud shall be required. *Id.*

13. Finally, the Virginia Fraud Against Taxpayers Act, provides, in pertinent part that:

> A. Any person who: 1. Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval; 2. Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth; 3. Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid; 7. Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Commonwealth.....shall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained by the Commonwealth. Virginia Fraud Against Taxpayers Act, § 8.01-216.3.

For purposes of this section of the Virginia Fraud Against Taxpayers Act, the terms "knowing" and "knowingly" mean possession of actual knowledge of relevant information, acting with deliberate ignorance of the truth or falsity of the information, or acting in reckless disregard of the truth or falsity of the information; provided, however, that no proof of specific intent to defraud shall be required. *Id.*

## FACTS

14. Because it is a Medicaid provider, Defendant must comply with all state and federal Medicaid requirements, including those relating to medical necessity for treatment, standards of medical care, and the provision of prescription medications and reimbursement of the same.

## Minnesota's Prohibition on Prescription Autofills for Medicaid Beneficiaries

15.     As a Medicaid provider in Minnesota, Defendant must comply with the rules set forth in the Minnesota Health Care Programs' "MHCP Provider Manual – Pharmacy Services", which rules expressly prohibit Defendant from automatically refilling prescriptions for Medicaid patients and beneficiaries or seeking reimbursement for automatically refilled prescriptions for Medicaid patients and beneficiaries. The Minnesota regulation, which became effective May 24, 2013, defines automatically refilled prescriptions as "non-covered" services and reads: "MHCP does not allow automatic refills. Prescription refills are not eligible for payment without an explicit request from a recipient or authorized caregiver. The pharmacy provider may not contact the recipient in an effort to initiate a refill unless it is part of a good faith effort to assess the recipient's medication regimen." This prohibition remains in effect to the present date.

## Massachusetts' Prohibition on Prescription Autofills for Medicaid Beneficiaries

16.     Similarly, as a Medicaid provider in Massachusetts, Defendant must comply with the commonwealth's laws, rules and regulations as set forth in the November 2005 "MassHealth Transmittal Letter PHM-53", which prohibit prescription autofills for Commonwealth of Massachusetts Medicaid patients and beneficiaries. Specifically, *Prescription Requirements*, §§ 406.411(C) Refills, subd. (6) reads as follows: "The MassHealth agency does not pay for any refill without an explicit request from a member or caregiver for each filling event. The possession by a provider of a prescription with remaining refills authorized does not in itself constitute a request to refill the prescription."

17. This rule expressly prohibits Defendant from automatically refilling prescriptions for MassHealth Medicaid patients and beneficiaries or seeking reimbursement for automatically refilled prescriptions for MassHealth Medicaid patients and beneficiaries. This prohibition remains in effect to the present date.

**New York's Prohibition on Prescription Autofills for Medicaid Beneficiaries**

18. New York has the same prohibition on autofills of Medicaid beneficiaries' prescriptions. Defendant must comply with the New York's Medicaid laws, rules and regulations, which have prohibited automatic refills since at least May 2010. According to the New York State Medicaid Update, May 2010, Volume 26, Number 7: "Automatic refill programs offered by pharmacies are NOT an option for Medicaid beneficiaries. Automatic refilling of prescriptions/orders for prescription drugs, over the counter products, medical surgical supplies and enteral products are NOT allowed under New York State Medicaid." (emphases in original)

19. This rule expressly prohibits Defendant from automatically refilling prescriptions for New York State Medicaid patients and beneficiaries or seeking reimbursement for automatically refilled prescriptions for such Medicaid patients and beneficiaries. This prohibition remains in effect to the present date.

**Virginia's Prohibition on Prescription Autofills for Medicaid Beneficiaries**

20. Similarly, as a Medicaid provider in Virginia, Defendant must comply with the commonwealth's laws, rules and regulations as set forth in the Virginia Department of Medical Assistance Services Memorandum dated June 7, 2013, which, effective July 1, 2013, prohibits prescription autofills for Commonwealth of Virginia Medicaid patients and beneficiaries. This regulation reads as follows: "Automatic refills

and automatic shipments are not allowed. Medicaid does not pay for any prescription (original or refill) based on a provider's auto-refill policy. Medicaid does not pay for any prescription without an explicit request from a member or the member's responsible party, such as a caregiver, for each filling event... The possession, by a provider, of a prescription with remaining refills authorized does not in itself constitute a request to refill the prescription... Any prescriptions filled without a request from a member or their responsible party may be subject to recovery."

21.   This rule expressly prohibits Defendant from automatically refilling prescriptions for Virginia Medicaid patients and beneficiaries or seeking reimbursement for automatically refilled prescriptions for such Medicaid patients and beneficiaries. This prohibition remains in effect to the present date.

### Defendant's False Claims and Fraudulent Conduct

22.   Relator was employed by Defendant from November 2014 through May 5, 2015, when he voluntarily resigned due to Defendant's continuing fraud and violations of the False Claims Acts.

23.   Defendant operates approximately 75 pharmacies in Minnesota, 38 pharmacies in Massachusetts, 71 pharmacies in New York, and 57 pharmacies in Virginia.

24.   During his employment at Defendant, Relator worked at approximately 17 of Defendant's pharmacies in the state of Minnesota, including without limitation the following locations: Andover, Blaine, Brooklyn Park, Cambridge, Champlin, Coon Rapids, Forest Lake, Fridley, Maple Grove North, Minneapolis Dinkytown, Minneapolis

Northeast, Monticello, North St. Paul, Northtown, Shoreview, St. Cloud East and Stillwater.

25.     Relator observed and has presented to the United States Government and the State of Minnesota credible evidence that Defendant has engaged in the submission of fraudulent and false claims for reimbursement to Medicaid for "non-covered" services at each of Defendant's approximately 17 pharmacies where he worked. These fraudulent and false claims practices of Defendant date back to and beyond May 24, 2013, and they continued as of the date of Relator's resignation in May 2015. Relator discovered through Defendant's computer system and records that Defendant engaged in the same submission of fraudulent and false claims for reimbursement to Medicaid at every pharmacy it owns and operates in the State of Minnesota, which totals approximately 75 pharmacies.

26.     Additionally, because Defendant's pharmacy employees are required to serve customers from any location, the computer system provides national, corporate-wide access to pharmacy records. Therefore, Relator had the ability to view pharmacy transactions in Defendant's stores across the United States, including those in Massachusetts, New York and Virginia.

27.     Defendant's pharmacy computer system permitted Relator to personally view fraudulent and false claims made by Defendant to MassHealth Medicaid, which provides Medicaid coverage for individuals throughout Massachusetts. Relator observed, and has presented to the United States Government and the Commonwealth of Massachusetts through the United States Attorney for Minnesota, credible evidence that Defendant has engaged in the submission of fraudulent and false claims for

reimbursement to Medicaid for "non-covered" services at each of Defendant's Massachusetts pharmacies. These fraudulent and false claims practices of Defendant date back more than six years, and they continue through the present date. Defendant has engaged in the submission of fraudulent and false claims for reimbursement to Medicaid at every pharmacy it owns and operates in the Commonwealth of Massachusetts, which totals approximately 38 pharmacies.

28. Defendant's pharmacy computer system was uniform throughout all of its pharmacies operated in the United States. This system allowed Relator access to its pharmacy records and system in each and every state.

29. Relator was aware that both New York and Virginia have nearly identical prohibitions to autofilling of Medicaid beneficiaries' prescriptions as do Minnesota and Massachusetts. Through Defendant's pharmacy computer system, Relator discovered that Defendant's pharmacies in New York and Virginia were allowing the pharmacists and technicians to set Medicaid beneficiaries' prescriptions on autofill, and Defendant was then engaging in such prohibited pharmacy transactions. In these states, Defendant has engaged in the submission of fraudulent and false claims for reimbursement to Medicaid for "non-covered" services at each of Defendant's pharmacies. These unlawful practices violated the False Claims Acts and continued at least through Relator's resignation in May 2015.

### Examples of Defendant's Automatic Refill of Minnesota Medicaid Beneficiary Prescriptions and Submission of Claims for Payment of "Non-Covered" Services

30. Subsequent to May 24, 2013, and in direct conflict with the State of Minnesota's prohibition against automatically refilling prescriptions of Medicaid patients, Defendant knowingly automatically refilled prescriptions of Medicaid

beneficiaries and submitted claims for reimbursement for these "non-covered" services, knowing that Minnesota's rules for payment precluded the submission of claims for such "non-covered" services.

31.     In Minnesota, Defendant continues to automatically refill prescriptions of Medicaid beneficiaries and to seek and receive payment of these "non-covered" services through the present date, despite the State's clear prohibition against such practices. Relator has personal knowledge of specific examples of Defendant automatically refilling the prescriptions of Medicaid beneficiaries and billing Medicaid for these "non-covered" prescriptions between May 24, 2013 and the present date. These instances include, by way of example only and without limitation, the following:

a.     On or about January 27, 2015, Prescription No. 7376752 for Clonidine HCL Oral Tablet 0.1 MG was automatically refilled at Defendant's Minnesota Pharmacy Store No. 0931. This was for a Minnesota Medicaid patient and Defendant billed Minnesota Medicaid for this prescription even though it knew it was billing for a "non-covered" service. Records show that Prescription No. 7365109 for the same drug was autofilled and sold by Defendant to this Minnesota Medicaid patient on or about October 30, 2014, resulting in the submission to and payment by Medicaid of $9.86. Additionally, Defendant autofilled Prescription No. 7344691 for Zyprexa (generic = Olanzapine) and sold it on June 16, 2014, resulting in the submission to and payment by Medicaid of $9.94.     Finally, this patient's records show Defendant autofilled Prescription No. 7376753 for Strattera on or about February 25, 2015.  Minnesota Medicaid was billed for this prescription as well. Defendant automatically refilled these prescriptions for this

Minnesota Medicaid patient and then fraudulently billed for these "non-covered" services, and received payment from Minnesota Medicaid in violation of the law.

b.     On or about October 27, 2014, December 4, 2014, December 28, 2014 and February 12, 2015, Prescription No. 7365237 for Tamoxifen was automatically refilled at Defendant's Minnesota Pharmacy Store No. 0931. This was for a Minnesota Medicaid patient and Defendant billed Minnesota Medicaid for this prescription even though it knew it was billing for a "non-covered" service. This patient's records at Defendant show that Prescription No. 7370885 for Lexapro and Prescription No. 7356282 for Valtrex are also both on autofill. The February 12, 2015 Tamoxifen prescription autofilled and sold by Defendant resulted in the submission to and payment by Medicaid in the amount of $16.00. Defendant's records also show that the Lexapro prescription was filled and sold using autofill on February 3, 2015 resulting in the submission to and payment by Medicaid in the amount of $7.47. Minnesota Medicaid was billed for these prescriptions. Defendant automatically refilled these prescriptions for this Minnesota Medicaid patient and then fraudulently billed for these "non-covered" services, and received payment from Minnesota Medicaid in violation of the law.

c.     On or about March 15, 2015, Prescription No. 7372965 for Abilify Oral Tablet 10 MG was automatically refilled at Defendant's Minnesota Pharmacy Store No. 0931. This was for a Minnesota Medicaid patient and Defendant billed Minnesota Medicaid for this prescription even though it knew it was billing for a "non-covered" service. Defendant automatically refilled these prescriptions for this Minnesota Medicaid patient and then fraudulently billed for these "non-covered" services, and received payment from Minnesota Medicaid in violation of the law.

d.     On or about January 12, 2015, Prescription No. 8814541for 81 mg chewable children's aspirin was automatically refilled at Defendant's Minnesota Pharmacy Store No. 1831. This was for a Minnesota Medicaid patient and Defendant billed Minnesota Medicaid for this prescription even though it knew it was billing for a "non-covered" service. This child's prescription for children's aspirin is on autofill. The records show that on at least four occasions this prescription was autofilled in the quantity of seven tablets. On or about January 12, 2015, Defendant filled and sold this prescription, resulting in the submission to and payment by Medicaid of $3.72 for a mere seven children's aspirin. The MHCP provider manual states that over-the-counter medications are to be billed as the full stock container, even if the order does not call for the full bottle amount or if the day's supply would be greater than 34. This prescription does in fact call for a quantity of 100. The charge of $3.72 is excessive. Defendant automatically refilled these prescriptions for this Minnesota Medicaid patient and then fraudulently billed for these "non-covered" services, and received payment from Minnesota Medicaid in violation of the law.

32.     Examples in ¶ 31.a.-d., *supra*, are of autofills of patients on straight Minnesota Medicaid. However, voluminous similar examples exist for those patients enrolled in Medicaid through a Managed Care Organization ("MCO"), which indicate Medicaid payments. Defendant, in direct violation of MHCP rules, also uses its autofill program to fill these Medicaid beneficiaries' and patients' prescriptions. Relator provides the following examples, without limitation and by way of example only:

a.     On or about February 7, 2015, Prescription No. 6972467 for Loperamide was automatically refilled at Defendant's Minnesota Pharmacy Store No. 1831. This was

for a Medica Health Partners Minnesota Medicaid patient, and Defendant billed Medicaid and the MCO for this prescription even though it knew it was billing for a "non-covered" service. Records show that this prescription was filled and sold resulting in the submission to and payment by Medicaid, through a Medicaid MCO, in the amount of $18.85. At least nine of this Medicaid patient's prescriptions at Defendant are on autofill. Additionally, Defendant autofilled Prescription No. 6988270 for Crestor and sold it to this patient three times from October 30 – December 25, 2014. Defendant automatically refilled these prescriptions for this Medicaid patient and then fraudulently billed for these "non-covered" services, and received payment from the Medicaid MCO in violation of the law.

b.     On or about November 1, 2014, Prescription No. 4599253 for Tramadol was automatically refilled at Defendant's Minnesota Pharmacy Store No. 1303. This was for a UCare Medicaid patient, and Defendant billed Medicaid and the MCO for this prescription even though it knew it was billing for a "non-covered" service. Records show that this prescription was filled and sold resulting in the submission to and payment by an MCO and Medicaid of $3.54. At least ten of this patient's prescriptions at Defendant are on autofill. Records show this same prescription was autofilled and sold on September 10, 2014 and October 6, 2014. Tramadol is a schedule IV controlled substance under the U.S. Controlled Substance Act. It is an opioid analgesic pain medication with risks of abuse and/or physical dependence if taken for extended periods. Additionally, profile notes show this patient is part of the Minnesota restricted recipient program. This program is meant to reduce costs and improve quality of care in cases where beneficiaries have a confirmed history of drug abuse. Defendant automatically

refilled these prescriptions for this Medicaid patient, fraudulently billed for these "non-covered" services, and received payment from the Medicaid MCO in violation of the law.

33. Each of these sales resulted in the submission to and payment by Medicaid of fraudulent and false claims under Minnesota Medicaid and MHCP regulations.

### Examples of Automatic Refill of Massachusetts Medicaid Beneficiary Prescriptions and Submission of Claims for Payment of "Non-Covered" Services

34. Subsequent to January 1, 2005, in direct conflict with the Commonwealth of Massachusetts' prohibition against automatically refilling prescriptions of MassHealth Medicaid program beneficiaries, Defendant knowingly automatically refilled prescriptions of MassHealth Medicaid beneficiaries and submitted claims for reimbursement for these "non-covered" services, knowing that Massachusetts' rules for payment precluded the submission of claims for such "non-covered" services.

35. In Massachusetts, Defendant continues to automatically refill prescriptions of Medicaid beneficiaries and to seek and receive payment of these "non-covered" services through the present date, despite the Commonwealth's clear prohibition against such practices. Relator has personal knowledge of specific examples of Defendant automatically refilling the prescriptions of Medicaid beneficiaries and billing Medicaid for these "non-covered" prescriptions. These instances include, by way of example only and without limitation, the following:

a. On or about October 30, 2014, November 28, 2014, December 26, 2014 and January 26, 2015, Prescription No. 6776110 for Sertraline was automatically refilled at Defendant's Worcester, Massachusetts Pharmacy Store No. 1348. This was for a MassHealth Medicaid beneficiary, and Defendant billed MassHealth Medicaid for these prescriptions even though it knew it was billing for "non-covered" services. At least the

following prescriptions for this patient are on autofill at Defendant's pharmacies: Sertraline; Hydrochlorothiazide; and Bupropion. Defendant's records show that Prescription No. 6773320 for Hydrochlorothiazide was filled via autofill and sold on December 3, 2014, December 29, 2014, January 26, 2015 and March 7, 2015. Defendant automatically refilled these prescriptions for this MassHealth Medicaid patient and then fraudulently billed for these "non-covered" services, and received payment from MassHealth Medicaid in violation of the law.

b.      On or about November 2, 2014, December 9, 2014, and January 4, 2015, Prescription No. 6795332 for Lisinopril was automatically refilled and sold at Defendant's Somerville, Massachusetts Pharmacy Store No. 1441. This was for a MassHealth Medicaid beneficiary, and Defendant billed MassHealth Medicaid for these prescriptions even though it knew it was billing for "non-covered" services. At least the following prescriptions for this patient are on autofill at Defendant's pharmacies: Docqlace; Amlodipine; Lisinopril; Metformin; Ferrous Sulfate; Omeprazole; and Aspirin 81 mg. Defendant's records show that Prescription No. 8821090 for Docqlace was filled via autofill and sold on or about January 15, 2015. Defendant automatically refilled these prescriptions for this MassHealth Medicaid beneficiary and then fraudulently billed for these "non-covered" services, and received payment from MassHealth Medicaid in violation of the law.

36.      Each of these sales resulted in the submission to and payment by Medicaid of fraudulent and false claims under MassHealth regulations.

37.      Relator personally witnessed Defendant engage in the unlawful automatic refilling of Medicaid patients and beneficiaries' prescriptions, and subsequent unlawful

billing to Medicaid for "non-covered" services, at each of Defendant's pharmacies where he worked.

38. Relator personally observed through Defendant's computer system and records that Defendant was engaging in the same type of fraud and submission of false claims to Medicaid programs in other states, including Massachusetts as set forth above, as well as New York and Virginia.

39. The above-described fraudulent solicitation, automatic refilling, dispensing, and billing practices of Defendant occurred at each and every one of Defendant's Minnesota pharmacies at which Relator worked, as well as those in the other Plaintiff States.

40. Defendant's fraudulent and false claims conduct in autofilling Medicaid patients' and beneficiaries' prescriptions continues to the present date. These practices have resulted in Defendant selling, dispensing, and receiving payment from Medicaid programs for "non-covered" services; namely, prescription medications that were not specifically requested by Medicaid patients and beneficiaries, their caregivers or their treating providers. These practices have also resulted in Defendant failing to provide the adequate health care and pharmaceutical services to Medicaid patients and beneficiaries in the Plaintiff States. These unlawful practices of Defendant occurred, and are still occurring, in every retail pharmacy of Defendant in the Plaintiff States.

41. On or about December 8, 2014, Relator reported to his supervisor that Defendant's conduct violated the law. The supervisor contacted Defendant's corporate headquarters. In response, a senior official from Defendant sent an email on or about

December 9, 2014 to Relator's supervisor stating there was no problem with the practice of autofilling Medicaid patient prescriptions.

42. On or about December 11, 2014, Relator contacted Defendant's corporate compliance officers through an internal report. Relator's report explicitly stated that he had observed and believed Defendant to be illegally, automatically refilling prescriptions of Medicaid patients and beneficiaries. Defendant ignored Relator's reports outlining its illegal practices and related submissions of false claims. Defendant's unlawful conduct continued unchecked after these reports by Relator. Relator was then permanently transferred to an undesirable pharmacy location by Defendant.

43. The actions of Defendant described above have resulted in the knowing submission of false claims to the United States Government and the Plaintiff States.

44. As a direct and proximate result of Defendant's false claims to Medicaid, and other actions taken in violation of the False Claims Acts, the United States Government and the Plaintiff States have been damaged.

## COUNT ONE
## UNITED STATES FALSE CLAIMS ACT VIOLATIONS
### 31 U.S.C. § 3729(a)(1) and (a)(2)

45. Relator re-alleges the foregoing paragraphs as though fully set forth herein.

46. Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States Government and the Plaintiff States false claims for payment of services and medications under Medicaid, in violation of 31 U.S.C. § 3729(a)(1).

47. Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government and the Plaintiff States, for payment of services and medications under Medicaid, in violation of 31 U.S.C. § 3729(a)(2).

48. Defendant, by and through its officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendant to take the unlawful actions set forth above and below.

49. Defendant knowingly hid and otherwise failed to disclose to the United States, the HHS, the Plaintiff States and other Federal and State agencies that Defendant has been submitting false claims for payment of services and medications under Medicaid.

50. Defendant falsely represented to the United States Government and the Plaintiff States that the billings Defendant submitted for payment of services and medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States Government and the Plaintiff States and the payment to Defendant for "non-covered" services by the United States Government and the Plaintiff States.

51. Defendant's course of conduct violated the United States False Claims Act, 31 U.S.C. §§ 3729 et seq.

52. The United States and the Plaintiff States have been damaged as a result of Defendant's violations of the United States False Claims Act to the extent that the United States and the Plaintiff States, unaware of the falsity of the claims and/or statements of

Defendant, and in reliance on the accuracy thereof, made payments to which Defendant was not entitled.

## COUNT TWO
## MINNESOTA FALSE CLAIMS ACT VIOLATIONS

53.     Relator re-alleges the foregoing paragraphs as though fully set forth herein.

54.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States Government and the State of Minnesota false claims for payment of services and medications under Medicaid, in violation of Minn. Stat. §§ 15C.01 et seq.

55.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government and the State of Minnesota, for payment of services and medications under Medicaid, in violation of Minn. Stat. §§ 15C.01 et seq.

56.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendant to take the unlawful actions set forth above and below.

57.     Defendant knowingly hid and otherwise failed to disclose to the United States, the HHS, State of Minnesota and other Federal and State agencies that Defendant has been submitting false claims for payment of services and medications under Medicaid.

58.     Defendant falsely represented to the United States Government and the State of Minnesota that the billings Defendant submitted for payment of services and

medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States Government and the State of Minnesota and the payment to Defendant for "non-covered" services by the United States Government and the State of Minnesota.

59.     Defendant's course of conduct violated the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq.

60.     The United States and the State of Minnesota have been damaged as a result of Defendant's violations of the Minnesota False Claims Act to the extent that the United States and the State of Minnesota, unaware of the falsity of the claims and/or statements of Defendant, and in reliance on the accuracy thereof, made payments to which Defendant was not entitled.

**COUNT THREE**
**MASSACHUSETTS FALSE CLAIMS ACT VIOLATIONS**

61.     Relator re-alleges the foregoing paragraphs as though fully set forth herein.

62.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States Government and the Commonwealth of Massachusetts false claims for payment of services and medications under Medicaid, in violation of the Massachusetts False Claims Act.

63.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States

Government and the Commonwealth of Massachusetts, for payment of services and medications under Medicaid, in violation of the Massachusetts False Claims Act.

64. Defendant, by and through its officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendant to take the unlawful actions set forth above and below.

65. Defendant knowingly hid and otherwise failed to disclose to the United States, the HHS, the Commonwealth of Massachusetts and other Federal and State agencies that Defendant has been submitting false claims for payment of services and medications under Medicaid.

66. Defendant falsely represented to the United States Government and the Commonwealth of Massachusetts that the billings Defendant submitted for payment of services and medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States Government and the Commonwealth of Massachusetts, and the payment to Defendant for "non-covered" services by the United States Government and the Commonwealth of Massachusetts.

67. Defendant's course of conduct violated the Massachusetts False Claims Act.

68. The United States and the Commonwealth of Massachusetts have been damaged as a result of Defendant's violations of the Massachusetts False Claims Act to the extent that the United States and the Commonwealth of Massachusetts, unaware of the falsity of the claims and/or statements of Defendant, and in reliance on the accuracy thereof, made payments to which Defendant was not entitled.

## COUNT FOUR
## NEW YORK FALSE CLAIMS ACT VIOLATIONS

69.     Relator re-alleges the foregoing paragraphs as though fully set forth herein.

70.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States Government and the State of New York false claims for payment of services and medications under Medicaid, in violation of the New York False Claims Act.

71.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government and the State of New York, for payment of services and medications under Medicaid, in violation of the New York False Claims Act.

72.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendant to take the unlawful actions set forth above and below.

73.     Defendant knowingly hid and otherwise failed to disclose to the United States, the HHS, State of New York and other Federal and State agencies that Defendant has been submitting false claims for payment of services and medications under Medicaid.

74.     Defendant falsely represented to the United States Government and the State of New York that the billings Defendant submitted for payment of services and medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States

Government and the State of New York, and the payment to Defendant for "non-covered" services by the United States Government and the State of New York.

75. Defendant's course of conduct violated the New York False Claims Act.

76. The United States and the State of New York have been damaged as a result of Defendant's violations of the New York False Claims Act to the extent that the United States and the State of New York, unaware of the falsity of the claims and/or statements of Defendant, and in reliance on the accuracy thereof, made payments to which Defendant was not entitled.

**COUNT FIVE**
**VIRGINIA FRAUD AGAINST TAXPAYERS ACT VIOLATIONS**

77. Relator re-alleges the foregoing paragraphs as though fully set forth herein.

78. Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States Government and the Commonwealth of Virginia false claims for payment of services and medications under Medicaid, in violation of the Virginia Fraud Against Taxpayers Act.

79. Defendant, by and through its officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government and the Commonwealth of Virginia, for payment of services and medications under Medicaid, in violation of the Virginia Fraud Against Taxpayers Act.

80.     Defendant, by and through its officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendant to take the unlawful actions set forth above and below.

81.     Defendant knowingly hid and otherwise failed to disclose to the United States, the HHS, the Commonwealth of Virginia and other Federal and State agencies that Defendant has been submitting false claims for payment of services and medications under Medicaid.

82.     Defendant falsely represented to the United States Government and the Commonwealth of Virginia that the billings Defendant submitted for payment of services and medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States Government and the Commonwealth of Virginia, and the payment to Defendant for "non-covered" services by the United States Government and the Commonwealth of Virginia.

83.     Defendant's course of conduct violated the  Virginia Fraud Against Taxpayers Act.

84.     The United States and the Commonwealth of Virginia have been damaged as a result of Defendant's violations of the Virginia Fraud Against Taxpayers Act to the extent that the United States and the Commonwealth of Virginia, unaware of the falsity of the claims and/or statements of Defendant, and in reliance on the accuracy thereof, made payments to which Defendant was not entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Relator, on behalf of himself and the United States Government and the Plaintiff States, respectfully prays:

A.     That this Court enter judgment against the above-named Defendant in an amount equal to three times the amount of damages the United States Government and the Plaintiff States have sustained because of Defendant's actions;

B.     That this Court impose on Defendant a civil penalty of $5,500 to $11,000 for each action in violation of 31 U.S.C. §§ 3729 et seq., the Minnesota False Claims Act, the Massachusetts False Claims Act, and the Virginia Fraud Against Taxpayers Act; and to impose on Defendant a civil penalty of $6,000 to $12,000 for each action in violation of the New York False Claims Act; plus three times the amount of damages each governmental plaintiff sustains.

C.     That this Court order Defendant to pay the costs of this litigation, with interest, incurred by both the Relator, the United States Government, and the Plaintiff States;

D.     That the Relator be awarded all costs incurred, including reasonable attorneys' fees;

E.     That, in the event the United States Government and/or the Plaintiff States continue to proceed with this action, the Relator be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action or settlement of the claim;

F.     That, in the event the United States Government and/or the Plaintiff States do not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not less than 25% nor more than 30% of the proceeds of the action or settlement of the claim;

G.     That the United States Government, the Plaintiff States and the Relator be awarded prejudgment interest; and

H.     That the United States Government, the Plaintiff States and the Relator receive all relief, both in law and in equity, to which they may reasonably appear entitled.

## JURY DEMAND

Relator, on behalf of himself, the United States Government and the Plaintiff States, hereby demands a trial by jury of all issues triable of right by a jury.

Date: June 9, 2015

**JOHN A. KLASSEN, PA**

John A. Klassen (No. 24434X)
310 Fourth Avenue South
Suite 5010
Minneapolis, MN 55415
(612) 204-4533
john@jaklaw.com

**MULLER & MULLER, PLLC**
Andrew P. Muller (No. 32467X)
3109 West 50th Street, No. 362
Minneapolis, MN 55410-2102
(612) 604-5341
apmuller@themullerlawfirm.com

**ATTORNEYS FOR PLAINTIFF AND RELATOR RYAN MESAROS**